## Case No. 6,631.

Ex parte HOLMES et al.

In re HOLMES et al.

[14 N. B. R. 493.][1]

District Court, D. Massachusetts. June 26, 1876.

BANKRUPTCY—ATTACHMENT—COSTS.

The costs of an attachment which has been dissolved by bankruptcy may be paid out of the fund, unless the attachment did not and could not operate to preserve the property for the general creditors.

---

[1] [Reprinted by permission.]

[In bankruptcy. In the matter of Edward O. Holmes and John W. Blanchard, copartners.]

E. Merwin, for assignee.

G. M. Hobbs, for attaching creditors.

LOWELL, District Judge. The single question in this case is, whether the expenses of an attachment which one creditor had made of the goods of the debtors are to be paid by the assignee. I decided in Re Fortune [Case No. 4,955] that I had authority under the bankrupt act [of 1867 (14 Stat. 517)] to allow such a charge. That decision was made about seven years ago, and no one has ever taken the question to a higher court. It avoided the great injustice of dissolving an attachment and leaving its necessary expenses to be a charge upon the unfortunate creditor, who had exercised no more than his strict legal right; and I infer, from the acquiescence of the profession, that they do not consider the law to have been strained in the attempt to arrive at justice.

Since Fortune's Case it has grown to be the practice to allow these costs, unless it can be affirmatively proved that the attachments did not and could not operate to preserve the property for the general creditors. It is not a question of good or bad feeling in the creditor, or of intent on his part, so long as it is a real attachment not procured by the debtor for preference or concealment.

In this case there is evidence that the attaching creditor stood out against a compromise proposed out of court, which was satisfactory to a large majority of the creditors, and, by his attachment, forced a recourse to bankruptcy; that he opposed, both here and in the circuit court, a composition duly offered and accepted, under which the assignee now makes his settlement. If we infer motives in the usual way from acts, we may say that the creditor intended to bring about bankruptcy rather than compromise. But he did nothing beyond his right, and it is impossible for a court of bankruptcy to admit that bankruptcy is not a lawful mode of settlement for insolvent debtors.

By consent of the parties I have consulted with Judge Shepley, who informs me that, although the precise question has not been presented to the circuit court, yet he has had one case in another district in which he allowed certain expenses, incurred by petitioning creditors, by a course of reasoning which coincides entirely with that adopted in Fortune's Case, and that the practice is to allow similar expenses in the cases in this circuit. Of course it is understood that this is not a judicial opinion of the circuit judge, and he would not have been consulted excepting by the consent of both parties.

The circumstances of Fortune's Case may have led me to dwell more than is necessary upon the purpose for which the attachment was made. The practice has not turned upon motive, but upon probable or possible results.

The costs of the attaching creditor are to be paid by the assignee.

[In Case No. 13,183, a petition of review, filed by a creditor opposed to the composition agreed upon, was denied.]